**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PELKIE R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22-cv-346 |
| v. | ) | |
| | ) | Magistrate Judge Keri L. Holleb Hotaling |
| MARTIN J. O'MALLEY, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Pelkie R.[1] appeals the decision of the Defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 13)[2] is DENIED, and the Commissioner's motion for summary judgment (Dkt. 21) is GRANTED. The Commissioner's decision is affirmed.

## I.    BACKGROUND

### A.    Procedural History

On May 5, 2020, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability beginning on April 26, 2018. (Administrative Record ("R.") 291-92.) Plaintiff's application was denied initially and upon reconsideration. (R. 176-92, 194-202.) An Administrative Law Judge ("ALJ") held an Administrative Hearing and later issued a May 26, 2022 decision finding Plaintiff not disabled. (R. 14-28.) The Appeals Council denied Plaintiff's

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]    Plaintiff filed a brief in support of motion for summary judgment (Dkt. 13), which the Court construes as a motion for summary judgment.

request for review (R. 1-7), rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g). *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004). Plaintiff filed this lawsuit seeking review of that decision. (Dkt. 1.)

B.     **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant period. (R. 16-29); *see also* 20 C.F.R. § 404.1520(a). The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020 and had not engaged in substantial gainful activity since her alleged April 26, 2018 disability onset date. (R. 14-15, 17.) At step two, the ALJ identified several severe and non-severe impairments (which the Court will address as needed below). (R. 17.) The ALJ decided at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the SSA's listings of impairments (a "Listing") under 20 C.F.R. 404, Subpart P, Appendix 1. (R. 19.)

Before step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b)," with some additional postural, manipulative, and environmental limitations. (R. 19.) At step four, the ALJ concluded Plaintiff would be able to perform her past relevant work as a medical clerk/receptionist as actually or generally performed. (R. 27-28.) The ALJ therefore terminated the disability analysis at step four, concluding Plaintiff was not disabled. (R. 28.)

C.     **The ALJ's Recitation of Relevant Evidence**

The ALJ found Plaintiff had the severe impairments of fibromyalgia, lumbar degenerative disc disease, history of asthma, osteoarthritis, and cervical spine strain. (R. 17.) The ALJ described medical records from Plaintiff's alleged onset date of April 26, 2018, to at least November 7, 2020, cataloguing Plaintiff's reported fibromyalgia flares and waxing and waning symptoms; pain with

multiple tender points including in the scapular regions, upper back, and lower back; joint pain; low back pain; and back and neck pain with muscle spasms. (R. 22-24.) The ALJ further noted Plaintiff's reports that she was limited to sweeping for ten minutes and driving for forty-five minutes, could not sit for long periods, and experienced brain fog and fatigue, constant pain at an eight on a scale up to ten, and difficulty squatting and arising. (R. 20-21.)

The ALJ, though, contrasted those portions of the record and testimony with other evidence. For example, providers routinely noted Plaintiff's normal gait and station (standing) and indicated that Plaintiff could get on and off the examination table without difficulty, walk fifty feet without support, perform a heel-to-toe walk, and stand and walk on toes or heels; had normal grip strength; could grasp and manipulate objects without difficulty, fully extend hands, make fists and perform other dexterity exercises; and had exhibited a normal range of motion through her shoulders, elbows, wrists, hips, knees, ankles, and cervical and lumbar spine. (R. 22, 23.) The ALJ further observed that radiographic imaging of Plaintiff's hips showed minimal degenerative disease with no apparent fracture or dislocation, and radiographic imaging of Plaintiff's cervical spine had showed mild degenerative changes. (R. 22, 24.) Further, Plaintiff had reported periodic improvements of symptoms with physical therapy, seasonal temperature increases, heat and rest, and injections and medication; she did not take prescribed muscle relaxers because she disliked the side effects, which included fatigue. (R. 22, 23, 24.) Plaintiff completed a two-mile walk during a stress test, could vacuum normally, independently dress and bathe herself, and shop and drive with periodic breaks, and had lifted heavy boxes. (R. 20, 21, 22, 24.) In 2018, Plaintiff reported flying a few hours on a domestic flight to visit family. (R. 21.) She helped care for her "ailing father in a nursing facility" and for her minor son. (R. 23-24.) Plaintiff revealed in 2019 that she studied for, sat for, and passed an examination related to a coding certificate. (R. 23, 26.) Finally,

examination records did not identify deficits in alertness, orientation, attention, or concentration, and Plaintiff did not frequently report such issues during medical examinations. (R. 24.)

The ALJ also considered statements of medical treatment providers and State Agency examiners. Plaintiff's treating rheumatologist, Dr. Kokebie, provided a July 2020 fibromyalgia medical source statement, indicating that Plaintiff had eighteen tender points with chronic widespread pain, numbness, tingling, neuropathy with muscle weakness, and a guarded prognosis. (R. 26.) She estimated Plaintiff could stand or walk less than two hours and sit about two hours of an eight-hour workday and therefore would require a job that would permit shifting positions at will and allow unscheduled breaks throughout the day. (*Id.*) She also opined that Plaintiff could rarely lift or carry less than ten pounds and never turn her head right or left, was incapable of even low-stress work, and would be absent more than four times per month due to her impairments and their impact on her functioning. (*Id.*) The ALJ found Dr. Kokebie's opinion minimally persuasive because it was not well supported, even compared to the doctor's findings in examinations, and was inconsistent with Plaintiff's descriptions of her activities, including leisure activities, educational pursuits, engagements with family, and the fact that Plaintiff did not use assistive devices related to upper extremity limitations. (*Id.*) The ALJ further deemed Dr. Kokebie's statements regarding Plaintiff's potential work absences speculative; the ALJ added that absences would be "only attribut[able] to the time [Plaintiff] was spending on other activities important in her life." (*Id.*)

As for State Agency consultants, the ALJ found the opinion of the medical consultant at the initial level, Dr. Vidya Madala, who indicated that Plaintiff could perform at the medium exertional level with some postural limitations and no manipulative or environmental limitations, minimally persuasive. (R. 26.) In particular, the ALJ found the recommendation of medium exertion to be inconsistent with the record at the reconsideration level. (*Id.*) The ALJ deemed the

reconsideration-level opinion of State Agency medical consultant Dr. James LaFata persuasive as well supported by and consistent with the findings during the relevant period. Dr. LaFata opined Plaintiff could perform work at the light exertional level with some postural and environmental limitations. (R. 26.) The ALJ further chose to limit neck flexion and extension to support Plaintiff's history of neck pain and fibromyalgia tender points. (R. 19.) Thus, the ALJ found Plaintiff retained the RFC to perform light work, except that she could occasionally climb ladders, ropes, or scaffolds; could occasionally stoop, crouch, kneel, and crawl; could not do repetitive flexion or extension of the neck; and must avoid poorly ventilated areas, chemicals, and concentrated exposure to environmental irritants like fumes, odors, dusts, and gases. (*Id.*)

### D. Standard of Review

On review, the Court does not "merely rubber stamp the ALJ's decision." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). That said, "[t]he findings of the Commissioner [] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Prill*, 23 F.4th at 746. Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "When reviewing a disability decision for substantial evidence," the Court does "'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [the Court's] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Thus, if there is substantial evidence supporting the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted).

## II.     ANALYSIS

Plaintiff argues: (1) the ALJ misapplied Social Security Ruling 16-3p in evaluating Plaintiff's description of her subjective symptoms; and (2) the RFC determination was incomplete and not supported by substantial evidence.

### A.      The ALJ's Subjective Symptom Assessment Was Not Patently Wrong

Plaintiff argues that, in evaluating her subjective symptom allegations, the ALJ drew improper and unsupported conclusions from "minimal" daily activities and the nature and perceived efficacy of Plaintiff's treatments. (Dkt. 13 at 6-10.) According to Plaintiff, once these reasons are "stripped from" the ALJ's decision, the decision improperly relies only upon the ALJ's "lay intuition." (*Id*. at 10.)

A mere diagnosis of an impairment does not typically indicate a disabling condition. *See, e.g., Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014) ("[A] [fibromyalgia] diagnosis . . . does not entitle [a claimant] to benefits."). Nor are "[a] claimant's assertions of pain, taken alone, [] conclusive of a disability." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (citing 42 U.S.C. § 423(d)(5)(A)). A claimant must show disabling symptoms. *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022); *see also Susan G. v. Kijakazi*, No. 20-cv-6110, 2023 WL 2525495, at *7 (N.D. Ill. Mar. 15, 2023) ("Plaintiff, however, does not explain how these findings and diagnoses amount to evidence that supports her allegations of *disabling* [fibromyalgia] pain.") (emphasis in original). "When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, [her] level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, No. 19-cv-1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017)); *see also* SSR 12-2p, 2012 WL 3104869, at *5 (July 25, 2012) (providing

6

same factors for fibromyalgia symptoms). "As long as an ALJ gives specific reasons supported by the record, we will not overturn [this] determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022).

The ALJ's decision more than met that standard. The ALJ recounted Plaintiff's reports of her symptoms and treatments (R. 19-27) and emphasized that "[d]espite contentions of frequent episodes of pain, including fibromyalgia flares" during the operative times, Plaintiff continued her education, traveled, and cared for family members and her household. (R. 23, 24, 26.) Plaintiff walked two miles in a stress test and reported some improvement of symptoms through treatment; examination observations frequently included a lack of deformity or abnormality, normal strength, ability to perform examination tests like heel-to-toe walk, standing and walking on heels or toes, perform one-legged standing and hopping, and the like. (R. 21-25.) Notably, the ALJ accepted Plaintiff's allegations regarding her symptoms so far as to restrict her to light work with postural limitations, but, contrary to Plaintiff's characterization (Dkt. 13 at 9), the ALJ did not indicate that any particular activity was "dispositive" of Plaintiff's ability to work fulltime. Instead, the ALJ focused upon inconsistencies with Plaintiff's description of her symptoms as disabling. Taking the ALJ's decision as a whole as the Court must, *see Marshall v. O'Malley*, No. 22-cv-662-JDP, 2024 WL 1327360, at *3-4 (W.D. Wis. Mar. 28, 2024), the ALJ's opinion is supported by some explanation and support and therefore is not "patently wrong."

Plaintiff nevertheless nitpicks the ALJ's analysis, insisting her continued education (which consisted of taking years of classes and obtaining a certificate in coding) occurred "prior to the alleged onset date of disability"; the ALJ, though, cited records suggesting that Plaintiff studied for and obtained her certificate after the alleged onset of her disability. (R. 23.) Even the testimony Plaintiff cites in support of her argument indicates she achieved the coding certification after her alleged April 2018 disability onset, despite seemingly taking some underlying classes prior to the

alleged onset date. (R. 48.) Plaintiff also minimizes her travel and familial activities (Dkt. 13 at 9), but, again, the ALJ's determination that Plaintiff's air travel "for a few hours" and activities with her father and son were inconsistent with her description of the severity of her symptoms has support in the record and is not patently wrong. (R. 21, 24, 26.) *See Vendetta G. v. O'Malley*, No. 21-cv-1097, 2024 WL 707200, at *7 (N.D. Ill. Feb. 21, 2024) (explaining that "[i]t is permissible for an ALJ to generally consider how a claimant's 'ability to travel would undermine [her] credibility'") (citation omitted). Plaintiff concedes she helped nursing-home staff turn her father, and the ALJ did not equate Plaintiff's activities with her father and son or her travel with her ability to work a full-time job. (Dkt. 13 at 9; R. 24, 26.) *See Tutwiler v. Kijakazi*, 87 F.4th 853, 858-59 (7th Cir. 2023); *see also* SSR 16-3p, 2017 WL 5180304, at *5, *7-8; *Green v. Saul*, 781 F. App'x. 522, 526 (7th Cir. 2019). Even if the ALJ's analysis as to the foregoing were flawed, the ALJ highlighted other evidence inconsistent with Plaintiff's described symptoms, including her reports regarding her ability to perform household chores like "vacuum[ing] normally," results of examinations and medical testing, and the fact that Plaintiff had "lift[ed] heavy boxes" in storage in December 2020. (R. 22, 24.) This is permissible. *See Susan G.*, 2023 WL 2525495, at *7-8 (explaining that "ALJ is entitled to consider objective evidence" such as "normal gait, normal neurological findings, negative straight leg raise, and normal range of motion . . . in evaluating a plaintiff's subjective symptom reports" of fibromyalgia pain).

Plaintiff also faults the ALJ for depicting her treatment, which included physical therapy, rest and heat, steroid injections, topical creams, and oral medications, as conservative and routine, and for observing that Plaintiff eschewed taking prescribed muscle relaxants. Plaintiff asserts that the ALJ erred by not specifically identifying other treatment Plaintiff might have pursued or accounting for Plaintiff's rationale for not taking muscle relaxants—her dislike of related side effects that included fatigue and dizziness. (Dkt. 13 at 10-11.) The ALJ, though, did not overlook

Plaintiff's explanations (R. 20), finding that Plaintiff's receipt of some relief from treatments she already was receiving rendered them "relatively successful[]." (R. 20, 23, 24.) That the ALJ also found Plaintiff could have further pursued chiropractic treatment and chose not to take muscle relaxants does not undermine the entirety of the ALJ's analysis regarding Plaintiff's symptoms. The Court must not reweigh this evidence as Plaintiff invites. *Zoch*, 981 F.3d at 602.

To the extent Plaintiff suggests the ALJ failed to exhaustively restate information already provided or explain away tidbits of contrary testimony or evidence related to the ALJ's conclusions, the Seventh Circuit has decisively and repeatedly rejected the premise that an ALJ must "rehash every detail each time he states conclusions on various subjects." *Gedatus*, 994 F.3d at 903. The ALJ here gave specific reasons supported by the record for finding Plaintiff's subjective reports not entirely consistent with the overall record, including examination findings. (*E.g.*, R. 24 (finding Plaintiff's allegations that her symptoms "preclude[d] all work activity during the period in question" were "outweighed by objective evidence, including physical examination findings and related radiographic imaging associated with the physical impairments alleged," along with the treatments Plaintiff received).) *See* 20 C.F.R. § 404.1529(c); *Tutwiler*, 87 F.4th at 858-59. Accordingly, the Court will not remand as to the ALJ's subjective symptom evaluation. *See Susan G.*, 2023 WL 2525495, at *7-8.

**B.** **The ALJ's RFC Determination Was Supported by Substantial Evidence.**

Plaintiff argues the ALJ's RFC analysis was flawed due to the ALJ's treatment of the opinions of Plaintiff's rheumatologist and a State Agency consultant. The ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. § 404.1520c(a), but must determine the persuasiveness of medical opinions by addressing at least the two most important regulatory factors, supportability (the objective medical evidence and explanation presented by the medical source) and consistency (how consistent the medical

opinion is with evidence from other medical and nonmedical sources in the claim). *Id*. § 404.1520c(b)(2), (c)(1)(2).

Plaintiff claims the ALJ provided insufficient analysis for rejecting the opinion of Plaintiff's treating rheumatologist Dr. Kokebie and further "rendered a summary conclusion" accepting the opinion of Dr. LaFata (State Agency consultant at the reconsideration level) with a modification the ALJ crafted. The Court disagrees.

Plaintiff insists that, in the analysis rejecting Dr. Kokebie's opinion,[3] the ALJ failed to specifically "identify any inconsistencies" between Dr. Kokebie's opinions and treatment notes. But the ALJ already had identified that Dr. Kokebie observed that Plaintiff reported improvement in symptoms following some treatments, demonstrated full range of motion, and had reported she studied for and took a coding examination (R. 23);[4] the ALJ was not required to reiterate those facts in the later analysis of Dr. Kokebie's opinion. *See Warnell*, 97 F.4th at 1053 (criticizing claimant for "putting the ALJ's written decision under a microscope and then flyspecking it" because "[t]ime and again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements"); *see also Michael T. v. Kijakazi*, No. 22-cv-2883, 2023 WL 7281819, at *5 (N.D. Ill. Nov. 3, 2023).

Further, although the ALJ's analysis of Dr. LaFata's opinion was brief, the ALJ explained that, unlike the State Agency consultant at the initial level, Dr. LaFata had reviewed additional

---

[3]  Dr. Kokebie opined that Plaintiff required a job that would permit shifting positions at will and allow unscheduled breaks throughout the day and that Plaintiff could rarely lift or carry less than ten pounds and never turn her head right or left, was incapable of even low-stress work, and would be absent more than four times per month due to her impairments.

[4]  Plaintiff mentions one strand of the ALJ's opinion about which the Court assumes the ALJ partially, albeit harmlessly, erred. Although the ALJ was within his purview to discount as unsupported and speculative Dr. Kokebie's opinion regarding how often Plaintiff would be absent or off-task, *see* 20 C.F.R. § 404.1520c(a), the Court assumes the ALJ should not have gone a step further to add his own surmise that any absences or off-task time "could only be attributed to the time claimant was spending on other activities important in her life." (R. 26.) After all, "a decision based on speculation is not supported by substantial evidence." *White v. Apfel*, 167 F.3 369, 375 (7th Cir. 1999). Because the Court has no doubt that correcting this error in one tangential aspect of the ALJ's reasoning would not change the result here, the error, while regrettable, is harmless.

information in the files and rendered an opinion (that Plaintiff could perform work at the light exertional level) that was well-supported and consistent with examination findings overall. Again, the ALJ had already detailed the key examination findings—imaging generally showing no abnormalities, routinely normal gait and station, normal range of motion in multiple joints, normal strength overall, and the efficacy of certain treatments. The ALJ's discussion convinces the Court the ALJ properly engaged with the evidence on which Dr. LaFata's opinions were based and reasonably concluded, based upon substantial evidence, that Dr. LaFata's opinions were persuasive. *See Deborah S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00002-MGG, 2021 WL 4892025, at *5 (N.D. Ind. Oct. 20, 2021).

The ALJ's choice to add a postural limitation to accommodate Plaintiff's reported neck symptoms does not alter this result. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."); *Kennedy v. Kijakazi*, No. 20-C-1925, 2022 WL 4129697, at *5 (E.D. Wis. Sept. 12, 2022) (holding that, although "some evidence in the record . . . could be construed as favorable to" claimant, ALJ "appropriately weighed the evidence," and ALJ's RFC findings as to claimant's "ability to reach overhead and engage in neck flexion, rotation, or extension [we]re supported by substantial evidence"); *Primm v. Berryhill*, No. 17-cv-6173, 2019 WL 480004, at *7, 10 (N.D. Ill. Feb. 7, 2019) (explaining that "even though the ALJ found certain testimony regarding [claimant]'s subjective symptoms lacking in support, he nevertheless accommodated [claimant's] purported neck symptoms in the RFC[,]" by limiting claimant to no "repetitive flexion, rotation, or extension of his neck," which "extend[ed] beyond what [claimant's] treating physician [] observed with consistency during the pertinent period"). In doing so, the ALJ did not impermissibly "fill evidentiary gaps" with "his own lay opinions" or "construct a middle ground

RFC without a proper medical basis." *Patricia A. P. v. O'Malley*, No. 3:23-CV-00240-MGG, 2024 WL 1298685, at *4 (N.D. Ind. Mar. 26, 2024) (cleaned up); *see Primm*, 2019 WL 480004, at *7, 10.

Plaintiff further protests that the ALJ's observation that heat and rest helped Plaintiff's symptoms indicated that the RFC should have included express allowances for Plaintiff to apply those measures during a workday. (Dkt. 13 at 10.) But Plaintiff does not point to any support for her implicit assumption that she would require mid-day breaks (much less unscheduled or unpermitted ones) to apply heat or rest. Without more, the ALJ's mere observation that Plaintiff had reported some improvement with heat and rest does not indicate that the RFC analysis was flawed; Plaintiff, after all, "bears the burden of proving she is disabled." *Prill*, 23 F.4th at 746. Plaintiff has not shown that the ALJ's analysis was faulty, so the Court will not remand on this ground.

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 13) is denied, and the Commissioner's motion (Dkt. 21) is granted. The decision of the Commissioner is affirmed.

ENTERED: August 5, 2024

_____

Hon. Keri L. Holleb Hotaling
United States Magistrate Judge